# WHEELING.

STATE *ex rel.* MILLER, AUDITOR, *v.* BUCHANAN, ASSESSOR.

Submitted June 20, 1884—Decided June 28, 1884.

1. The legislative, executive and judicial departments of the government must be kept separate and distinct, and each in its legitimate sphere must be protected.  (p. 379.)

2. Each department of the government may decide what the law is upon any subject within its jurisdiction, and that must be regarded as the law until it is finally decided to be unconstitutional by the Court of last resort, to which the Constitution, equally binding upon all of the departments, has committed the final decision.  And if that Court should be corrupt or arbitrary in the exercise of its powers thus committed to it, the same Constitution has provided an effectual remedy by resort to the high court of impeachment.  (p. 379.)

3. The Constitution vests the chief executive power in the Governor and requires that he shall take care that the laws be faithfully executed.  Under this positive requirement of the Constitution the Governor must, under the oath he has taken, be vigilant and with all the power at his command require the execution of the valid laws, which the Legislature has passed ; because in its wisdom the Legislature passes such laws as the good of the State requires, and none other ; and if the chief executive does not see to their faithful execution, he neglects to discharge his duty, and the object of the legislative department, to the extent the laws have not been executed, has failed.  (p. 381.)

4. Before the Govener executes a law, he must of necessity decide, whether the act of the Legislature, which he is thus called upon to execute, is constitutional and valid or unconstitutional and void.  (p. 381.)

5. The Governor having jurisdiction of the subject decided, that the effect of the decision of the Supreme Court of Appeals in *Railway Co.* v. *Miller, Auditor,* 19 W. Va. 436, was to declare uncon-

stitutional and void so much of section 43 of chapter 12 of the Acts of 1881, as exempted from taxation certain property therein specified, and that said chapter 12 was a complete tax-law without said portion of said section, and requested the Auditor, who has the oversight of the assessors in the various counties and districts in the State, to instruct the said assessors in their assessments to disregard said portion of said section and assess the property therein attempted to be exempted, and the Auditor gave said instructions. The law so construed by the chief executive and given by the Auditor in his instructions to the assessors was binding on them. (p. 382.)

6. The constitutionalty of said section 43 can be tested by the taxpayer, when the law, as so declared by the Governor, is made to operate on him. It is then his right, as a citizen, to resort to the court by the proper proceedings and have it decided, whether the property claimed by him to be exempt under said section 43 of chapter 12 Acts of 1881 is liable to be assessed ; and if the court should decide against him, he could then appeal to the Supreme Court of Appeals, which would either sustain said section 43 or declare it unconstitutional, so far as it attempted to exempt said property. (p. 382.)

7. It is not the right of a subordinate executive or ministerial officer to arrest the excution of the law as construed by the chief executive, and he cannot justify his insubordination on the ground that the Governor had decided wrong ; his duty is obedience to the law as thus construed. (p. 382.)

8. It is no concern of the assessor, as such, whether the tax is illegal or valid. It is his duty to obey the instructions of his superior as to what property is subject to taxation, and if he refuses to assess such property and a *mandamus* is prayed to compel him to assess such subjects as he has been by the Auditor under the decision of the Governor instructed to enter on his personal property-book, he cannot shield himself by denying the legality of the instructions. The question whether said section 43 is or is not constitutional is not decided in this case as it is deemed that such decision is neither necessary nor proper in this proceeding. (p. 384.)

9. As *mandamus* is a discretionary writ, if it manifestly appeared to the Court, that the articles enumerated in the alternative writ were under the law exempt from taxation, the Court would decline to issue the writ, not because the respondent has any right to make such defence or rely on such reason as an excuse for his insubordination, but because the Court would not be willing to involve the citizens in expensive litigation growing out of the imposition of a clearly illegal tax. (p. 384.)

10. *Mandamus* is the proper remedy to compel an assessor to assess property, which is liable to taxation. While the exercise of

judicial discretion will not be controlled by *mandamus*, yet *mandamus* is proper to compel the assessor to exercise his discretion. The assessor has no right to decide against instructions what kind of property is liable to taxation; after ascertaining the taxable property under such instructions and the value and ownership thereof his discretion ceases, and it then becomes his clear duty to enter the same on his personal property-book. (p. 385.)

11. The statute, which requires that a copy of the personal property-book shall be by the assessor delivered to the county-clerk on or before the first day of July, is directory. (p. 386.)

12. The right of the State to have her revenue assessed and collected cannot be lost by the laches of her agents. (p. 386.)

JOHNSON, PRESIDENT, furnishes the following statement of the case:

On June 5, 1884, Joseph S. Miller, Auditor of this State, presented his petition in which he alleged, that he is and was before and since January 1, 1883, Auditor of this State, and as such, is specially charged with the oversight and management of the assessment of taxes therein and with the oversight and control of the assessors of the various counties and assessment districts of said State; that subsequently to the rendering of the decision of the Supreme Court of Appeals in the case of the Chesapeake and Ohio Railway Company against him, as such Auditor, to-wit, on February 26, 1883, he received from the Governor of the State an official communication addressed to him, as such Auditor, calling attention to the construction given by the said Court in said decision to the Constitution of the State and the laws governing the taxation of property, suggesting that this construction determined the unconstitutionality of the exemption from taxation of property mentioned in section 43 of chapter 12 of the Acts of the Legislature of 1881, and requesting the petitioner, as Auditor as aforesaid, to instruct the assessors in the several counties in the State, to assess and return all property for taxation, except the property exempted by the Constitution, a copy of which communication is filed with the petition as a part thereof; that in pursuance of the Governor's request, and of what petitioner conceived to be his duty under the law, and in compliance with the provi-

visions of section 5 of said chapter 12 of the Acts of 1881, he afterwards, to-wit, on March 5, 1883, sent to each of the assessors in the several counties in the State a printed circular containing a copy of said communication of the Governor to him and instructions by him to said assessors to disregard so much of the said section 43 of chapter 12 Acts of 1881, as provided for the exemption from taxation of any other classes of private property except those used for educational, literary, scientific, religious or charitable purposes or for cemeteries; and to assess all private property not belonging to one or another of these excepted classes; a copy of said instructions being filed with the petition, and made part thereof; that one of said circulars containing said instructions was sent to T. H. Buchanan, assessor of Brooke county, on or about the 5th day of March, 1883; that about the 1st day of January, 1884, another of said circulars containing said instructions was again sent, by the petitioner to each of the assessors in the State, including said T. H. Buchanan; that instructions thus given have never been in any manner modified or revoked; that petitioner is advised that those portions of section 43 of chapter 12, Acts of 1881, which attempt to exempt from taxation agricultural productions grown directly from the soil, and the products and increase of live-stock produced within this State during the year preceding the first day of January, and remaining unsold on that day, in the possession of the original owner, or his agent; the produce during the same time of mines, salt-wells and oil-wells, within the State, remaining unsold in the hands of the producer, or his agent, on the first day of January, and all manufactured articles and products of mechanical skill and labor, produced in this State during the same time, and remaining unsold on the first day of January, in the hands of the producer or his agent, are unconstitutional, and that it is the duty of the assessors in the several counties of the State and of the defendant, Buchanan, to assess the said property; that in the said county of Brooke there were on the first day of January, 1881, large quantities of said property in the hands of numerous citizens of said county; that said Buchanan has been the assessor of said Brooke county since the first day of January, 1883,

and still is such assessor; that since the first day of
January, 1884, the said assessor has been proceeding to
ascertain the personal property subject to taxation in said
county and to make entries thereof in his personal property-
book, but although he well knew of the existence of great
quantities of personal property of great value in his county
subject to taxation, as aforesaid, consisting of agricultural
products, &c., naming them, and consisting of the same sub-
jects before enumerated, and the names of the persons to
whom the same ought to be assessed, and knew, or could
readily have ascertained, the values thereof, nevertheless the
said Buchanan has wholly failed to assess or to enter in his
personal property-book any of the said property subject to be
assessed in said county, although the said assessor has entered
in his said book the other personal property with the values,
and the names of the owners thereof, of many of the citizens
of said county, who within the knowledge of said Buchanan,
had on the first day of January, 1884, subject to assessment
and taxation property belonging to the said classes described
in the said unconstitutional portion of said section 43 of
chapter 12 of the Acts of 1881; and that said Buchanan is
now proceeding with his assessments in the said county of
Brooke in the same illegal manner, and petitioner believes,
that unless commanded otherwise he will complete and
return his assessment of the personal property in his said
county for the current year, without assessing, listing or re-
turning any of the personal property in said county of Brooke,
coming within the terms of the said unconstitutional portion
of said section 43, and that the rightful revenues of the State
will be unlawfully decreased by the failure to include in the
assessment so that the same may be taxed, the said personal
property, so unlawfully omitted, and intended to be omitted
by said Buchanan; that information was given petitioner of
the unlawful manner in which said assessor was failing to
assess property, subject to taxation, and on the 7th day of
May, 1884, petitioner wrote to him, calling his attention to
the fact that petitioner had such information, and referring
to the instruction sent him by petitioner, and asked an ex-
planation; that he answered on the 9th day of May, 1884,
that "he was making the assessment of personal property in

his county according to chapter 12 of the Acts of the Legislature of 1881, and that that was the latest authority he had on the question;" the letter being exhibited with the petition; that petitioner is informed that the assessors in many of the counties throughout the State have been and are making their assessments in defiance of petitioner's said instructions, and have been and are failing to assess or enter in their personal property-books any of the classes of property mentioned in the said unconstitutional portion of section 43 of chapter 12 of the Acts of 1881, so that the revenues of the State are in danger of being greatly and unlawfully diminished; that in other counties of the State the assessors have been assessing and are assessing all personal property in accordance with petitioner's said instructions and the constitutional provision already referred to, so that uniformity of taxation throughout the State cannot be preserved while the defendant and other assessors fail in their duty, and the taxpayers are therefore greatly injured and damnified. Petitioner prays a *mandamus* commanding the said T. H. Buchanan "to ascertain the personal property which was in his said county of Brooke on the first day of January, 1884, consisting of agricultural products grown directly from the soil, and the products and increase in number of live stock produced within this State during the year next preceding the first day of January, 1884, and remaining unsold on that day in the possession of the owner or his agent, and the produce during the same time of mines within this State remaining unsold in the hands of the producer or his agent on the said first day of January, 1884, and all manufactured articles and products of mechanical skill and labor produced in this State during the same time and remaining unsold on the first day of January, 1884, in the hands of the producer or his agent, and to ascertain the values thereof and the names of the persons to whom the same ought to be assessed, and to make the proper entry thereof in his personal property-book for the year 1884."

The communication from the Governor referred to in said petition and made a part thereof is as follows:

"STATE OF WEST VIRGINIA,　　⎫
"EXECUTIVE DEPARTMENT, WHEELING, Feb. 26, 1883. ⎰

"*Hon. Jos. S. Miller, Auditor West Virginia:*

"DEAR SIR:—The Supreme Court of this State, in the case of the Chesapeake and Ohio Railway Company against you as Auditor of the State, on April 22, 1882, decided that 'the clear meaning of section 1 article 8 of the Constitution of 1863 is that ALL property, both real and personal, shall be taxed, except such as the Legislature may exempt under the exception contained in said section.' The property that might be exempted from taxation by the provisions of said section was 'property used for educational, literary, scientific, religious or charitable purposes, and public property.' The Judge in delivering the opinion of the Court in this case (see 19 W. Va. 436) says: The rule laid down is that 'all property, both real and personal, shall be taxed,' and the exception which proves the rule is that the Legislature might exempt from taxation certain property therein enumerated, but certainly would not have authority to exempt any other property even for a consideration. The provisions of section 1 of article 10 of the present Constitution, are the same as section 1 article 8 of the Constitution of 1863, except that cemeteries are added to the list of property that the Legislature might exempt from taxation, with the additional power conferred that 'the Legislature shall have power to tax by uniform and equal laws, all privileges and franchises of persons and corporations.'

"Applying the decision in this case, to article 1 of section 10 of our Constitution, for it must be taken and held as the proper construction of said article made by the highest authority in this State, all acts of the Legislature which exempt from taxation other property than that mentioned in said article, viz: 'Property used for educational, literary, scientific, religious or charitable purposes, all cemeteries and public property' are unconstitutional and void.

"Your attention is therefore called to the provision of section 43 of chapter 12 of the Acts of 1881, the act now in force in relation to the assessment of taxes, in which section the Legislature has attempted to exempt other property from taxation in addition to the exemption permitted by the Con-

stitution. The exemptions mentioned in said section of said act and not permitted by the provisions of the Constitution, said section 1 article 10, are by the decision of said Court herein cited, declared to be repugnant to the Constitution.

"I therefore deem it my duty under the Constitution, the Legislature having failed to amend said act so as to make it conform to the Constitution, to call your attention to said decision, and to request you in your instructions to the assessors of taxes in the several counties in the State, to instruct them to assess and return all property for taxation, except the property exempt by the Constitution and not exempt from taxation any property in said section 43 chapter 12 of the Acts of 1881, not covered by the constitutional exemption.

"Respectfully,

"J. B. JACKSON."

In compliance with the said request, on March 5, 1883, the Auditor sent to the assessors of the several counties of the State, as he alleges in his petition, a circular containing in full the said communication from the Governor, and containing the following "instructions as to exemptions:"

"The Supreme Court of Appeals of this State in the case referred to by the Governor in the foregoing communication, having decided that the Legislature could not by any act exempt any property from taxation except such as is enumerated in section 1 article 10 of the Constitution, that is to say, 'property used for education, literary, scientific, religious or charitable purposes, and all cemeteries and public property' you are therefore hereby instructed to disregard so much of section 43 chapter 12 Acts 1881 (assessment law), as provides for the exemption of any other class or species of property from taxation; and you will cause all property which is not used for educational, literary, scientific, religious or charitable purposes, or is not a cemetery or public property, to be placed upon your books at its proper valuation. The following classes of property which are attempted by said section of the assessment law to be exempted must now be placed upon your books and assessed with taxes, viz: Property belonging to agricultural associations; agricultural productions; the products and increase of live stock; the produce of

mines, salt wells, and oil wells; all manufactured articles, and products of mechanical skill and labor.

"Very respectfully,

"JOSEPH S. MILLER, *Auditor.*"

This communication of the Auditor is exhibited with the petition as a part thereof.

On the sixth day of June last this Court issued its alternative writ of *mandamus* commanding said T. H. Buchanan, assessor of Brooke county, "to ascertain and enter in his personal property-book for the year 1884, with the value thereof, and the names of the persons to whom the same ought to be assessed," the property described in the petition, enumerating the same in said writ; *or* that he should appear before this Court on June 13, 1884, at ten o'clock A. M., to show cause why he had refused so to do. On the 13th day of June last the defendant, T. H. Buchanan, made his return to that writ under oath. His return is as follows:

"1. Agricultural productions grown directly from the soil, and the product and increase in number of live stock produced within this State during the year next preceding the 1st day of January, 1884, and remaining unsold on that day in the possession of the original owner or his agent, the produce during the same time of mines within this State, remaining unsold in the hands of the producer or his agent on the 1st day of January, 1884, and all manufactured articles and products of mechanical skill and labor, produced in this State, during the same time, and remaining unsold on the 1st day of January, 1884, in the hands of the producer or his agent, are exempt from taxation for the year 1884 under the provisions of section 43 of chapter 29 of the Code as amended by chapter 12 of the Acts of the Legislature of 1881, which section is constitutional, binding both Auditor and assessor, and is in full force.

"2. The duty of the respondent as assessor of Brooke county, is to ascertain all personal property, subject to taxation in his district, with the value thereof from the lists and information furnished him by the persons in his district who are required by law to list such property, and respondent is authorized to list the property and assess its value, or to supply any omissions or correct any error, only in case such per-

son fail to furnish a proper list, or the list furnished be in the judgment of the assessor incomplete or erroneous in any respect.

"3. The persons within respondent's district, who are required by law to list personal property, did furnish lists of their property, subject to taxation, in the form required by law and from the said lists respondent made the proper entries in his personal property-book, and before the writ aforesaid issued against him, completed his said personal property-book, and furnished to the county court of Brooke county a statement of the aggregate sum of personal property shown by said books, upon which sum the said county court before said writ issued laid the levy for 1884. Respondent is not now and was not when the writ issued engaged in assessing personal property, or making entries of the same, having completed such entries as aforesaid.

"4. All the lists furnished respondent as aforesaid by persons in his district, were examined, considered and passed upon by him, and in his judgment were proper and correct, and not incomplete or erroneous in any respect. In determining with reference to said lists, and in all his acts with respect to ascertaining the personal property subject to taxation in his district with the value thereof, and the name of the person to whom the same ought to be assessed, and with reference to making the proper entries thereof in his personal property-book, respondent respectfully insists that he was acting judicially, and he is advised and respectfully insists that his acts in so doing are not subject to the control of this honorable court by writ of *mandamus*.

"5. Respondent is required by law, and especially by the provisions of section 79 of the said chapter of the Code, to deliver one copy of his personal property-book to the clerk of the county court of Brooke county on or before July 1; 1884. Respondent respectfully shows, that it will be impossible, in the time remaining before the 1st day of July, 1884, to ascertain and enter in the personal property-book, the articles required by said alternative writ, to be so ascertained and entered.

" 6. In many other counties of the State the lists as returned by tax-payers, and the entries made upon the personal

property-books by assessors, don't include articles such as those last mentioned. This fact is well known to the said Joseph S. Miller, Auditor, but the said Auditor has taken no steps against the said tax-payers or assessors, to compel such action as he seeks to require of respondent. Taxation therefore cannot and will not be uniform and equal, and great injustice will be done the tax-payers of Brooke county, if they are required to pay taxes upon articles of the nature mentioned in the said alternative writ, while the tax-payers of other counties are exempt from the payment of such taxes.

" 7. The tax-payers of the county of Brooke, who on the 1st day of January possessed articles such as those specified in said alternative writ, are interested in the question raised by this proceeding, but are not parties hereto, and respondent respectfully insists that this Court should not, while they have no opportunity to be heard, pass upon the constitutionality of a statute in which they are interested.

" 8. The decision of this Court in the case of *Chesapeake and Ohio Railway Co.* v. *Miller*, mentioned in the petition, was made on April 22, 1882. The said Miller, who was then, and has been since, Auditor, took no steps toward requiring the taxation of such articles as are mentioned in the alternative writ until March 5, 1883, when he issued the instructions to the assessors, a copy of which is filed with his petition herein. The assessors throughout the State failed in the year 1882 to enter any such articles upon the personal property-books, and this fact the said Miller, Auditor, well knew. In the year 1883 many assessors in the State, respondent among the number, refused and failed to make such entries as the said Joseph S. Miller, Auditor, well knew. In the year 1884, many assessors in the State have failed and refused to make such entries as said Miller, Auditor, well knew. But until the issue of the writ herein against respondent the said Miller, Auditor, has instituted no proceeding intended to compel the making of such entries by assessors. Respondent insists that the *laches* of the said Miller herein has been such as to deprive him of any right to the relief prayed by him.

"9. Respondent avers that said Miller as Auditor is not specially charged with the oversight and management of the

assessment of taxes, or with the oversight and control of the assessors, except that he is authorized by section 5 of chapter 29 of the Code to give such instruction to the assessors, respecting their duties as may seem to him judicious, and are not contrary to law.

"10. The said Joseph S. Miller, Auditor, if aggrieved by any entry in respondent's personal property-books, has an adequate remedy under the provisions of section 94 of said chapter 29 as amended by chapter 164 of the Acts of 1882 and is therefore not entitled to a writ of *mandamus.*"

To this return the relator demurred, in which demurrer the respondent joined; and on June 19th and 20th, the case was elaborately and ably argued by counsel on both sides.

*H. M. Russell* for petitioner.

*W. P. Hubbard, T. Melvin, J. B. Sommerville* and *J. C. Palmer* for respondent.

JOHNSON, PRESIDENT:

The first question presented is: Can the assessor shield himself under the first defence in his return, viz, that he refused to list the property commanded to be listed by the alternative writ, because such property is by section 43 of chapter 12 of the Acts of 1881 exempted from taxation, and said section is constitutional and valid? Can each of the eighty-three assessors in this State in defiance of the instructions of the Auditor refuse to assess property by him decided to be taxable under the law, and each for himself decide what property he will assess, and what he will declare exempt from taxation, and then successfully resist a peremptory writ of *mandamus,* on the ground that his instructions were illegal, and the property, which he was ordered to put on the personal property-book, was exempt by law? If he may do this, it is quite possible that each assessor might take a different view of the law, and thus very much of the taxable property of the State go untaxed, and the revenues of the State be diminished much below the estimates of the Auditor, and the machinery of the State-government be clogged or entirely stopped, it may be. If this be the cor-

rect idea of the powers and duties of assessors, why did the Legislature in section 5 of chapter 12 of the Acts of 1881, provide: "The Auditor shall prepare and forward to the assessors printed forms for the personal property-books and also for *the lists of taxable subjects* to be furnished by assessors to persons chargeable with taxes. He shall also by letter or printed circular give such instructions to the assessors respecting their duties, as may seem to him judicious; and if any assessor shall fail to obey such instructions, so far as they are not contrary to law, he shall forfeit not less than ten nor more than thirty dollars?" Why did the Legislature provide that the Auditor should send to the assessors printed forms for the lists of *taxable subjects* and give them instructions as to their duties? Because it was clear to the legislative mind, that in no other way could the *equality* and *uniformity* of taxation required by the Constitution be secured. Taxation could not be equal and uniform, if eighty-three assessors could construe the law, and each for himself decide what property was taxable and what exempt.

Can a ministerial officer refuse to obey the instructions of his superior and then excuse himself for such disobedience on the ground that his instructions were illegal? In *Waldron* v. *Lee*, 5 Pick. 323, it was held, that "if the person appointed to warn a school-district returns that he warned the inhabitants but without stating the time or manner of warning, and the inhabitants meet and vote to raise a sum of money, and this vote is duly certified to the assessors, they are obliged to assess the tax, and neither they nor the town-treasurer can enquire into the regularity of the proceedings antecedent to the meeting." That was a *mandamus* case. The alternative writ was directed to the treasurer commanding him to issue his warrant of distress against the collectors, or show cause to the contrary. The treasurer insisted in his return, that the tax was illegal. Parker, C. J., delivered the opinion of the court. He said: "It is clear by the authorities that it" (*mandamus*) "is the proper and perhaps it is the only manner in which the sovereign power can compel the performance of official duty by inferior magistrates and officers of the law. Without such power somewhere, the affairs of the public might be brought to a stand; and as in England, so in this

commonwealth, the highest common-law judicial authority is made the depository of this power.

"No more proper case can arise for an application like the present, than where those entrusted with the revenue of the country refuse to perform their duty; for without a vigorous compulsory power upon them, great public mischief might ensue. The State treasury would be embarrassed, if those who are to collect its revenue may not by summary process be compelled to do their duty. So with counties, towns and divisions of towns, authorized by law to tax the members of these several communities. To ensure and enforce the collection of town taxes when they are assessed and committed to a constable with proper authority, if he failed to do his duty he is compelled by the sheriff, &c., acting under a warrant of the treasurer of the town, authorizing distress of the collector's goods and chattels and the imprisonment of his person. * * * The treasurer is a mere ministerial officer; he has no right to pause in the execution of his duty on the suggestion of errors or mistakes in the proceedings. If the facts upon which he is to act are properly certified to him, he has no discretion, but is obliged to issue his warrant. Whether the tax be legal or illegal, whether duly assessed or not, are not subjects for him to enquire about. If there be a tax, an assessment, a warrant to the collector, all certified to him by the assessor duly qualified to act, his duty is clear, and he is peremptorily commanded by the law to discharge it." The peremptory *mandamus* issued.

In *The People* v. *Collins*, 7 Johns. 549, a *mandamus* was prayed to require the defendant, a town-clerk, to record a survey of a highway; and in his return he insisted that the survey was illegal. Kent, C. J., said: "It certainly did not lie with the defendant as a mere ministerial officer to adjudge the act of the commissioners null. It was his duty to record the paper; *valeat quantum, valere potest.* It was enough for him, that these persons had been duly elected commissioners within the year, and were in the actual exercise of the office."

In *Smyth* v. *Titcomb*, 31 Me. 273, it was held, that a ministerial officer entrusted with the collection and disbursement

of revenue in any of the departments of the government has no right to withhold a performance of his ministerial duties, prescribed by law, merely because he apprehends that others may be affected thereby, or that possibly the law may be unconstitutional. The petition was for a *mandamus* against the treasurer of the town of Brunswick. The treasurer had refused to issue his warrant of distress against the collector. In his return the treasurer insisted that the tax was unconstitutional, and otherwise illegal. Howard, J., for the court said: "Another objection taken is that the special law of 1848, chapter 140, is unconstitutional and all the proceedings under it are void. It does not however lie with the respondent as a ministerial officer to make this objection. He is not authorized or required to adjudicate the law. On a summary hearing on a petition for a *mandamus* this court will not determine the question of the constitutionality of the law, involving the rights of third persons, but will leave that question to be decided when properly presented by parties to an action. For this hearing we assume that the act is constitutional." The judge further said, 286: "A public officer entrusted with the collection and disbursement of revenue in any of the departments of the government, has no right to refuse to perform his ministerial duties prescribed by law, because he may apprehend that others may be injuriously affected by it, or that the law may possibly be unconstitutional. He is not responsible for the law, or for the possible wrongs which may result from its execution. He cannot refuse to act because others question his right. The individuals to be affected may not doubt the constitutionality of the law, or may waive their supposed rights or wrongs, or may choose to contest the validity of the enactment personally. Public policy as well as public necessity and justice, require prompt and efficient action from such officers. The State, counties, towns and school-districts must be supplied, in order to accomplish the purposes of their organization, and the proper officers in their respective departments must seasonably furnish the authorized amounts. The consequences would be ruinous, if they could withhold their services and the necessary means either from timidity or captiousness, until all questions of law, which might arise in the per-

formance of their official duties, should first be judicially settled."

In *the People ex rel.* v. *Salomon*, 54 Ill. 39, it appeared that a clerk of a county court had refused to extend upon the collector's books the taxes according to the increased valuation, determined by the State board of equalization, and proceedings were instituted to compel the clerk by *mandamus* to make such extension, which resulted in the award of a peremptory writ. It was held in a proceeding by attachment against the clerk for contempt in failing to obey the writ, that it was no justification of such disobedience, that a compliance with the command of the writ had become impossible by reason of the collector's books, upon which the extension was directed to be made, having been delivered to the township collector, and the clerk could not re-posses himself of them, that fact existing at the time the alternative writ issued, and being in no way brought to the attention of the court; that a ministerial officer cannot be allowed to decide upon the validity of a law, and thus exempt himself from responsibility for disobedience to the command of a peremptory writ of *mandamus*, his disobedience to the law being the cause of his inability to obey the command of the court; that it is the duty of a ministerial officer to obey an act of the Legislature directing his action, not to question or decide upon its validity. Breese, C. J., delivering the opinion of the court, and addressing the defendant said :

"To allow a ministerial officer to decide upon the validity of a law would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all like officers may do the same and an end be put to civil government, one of whose cardinal principles is subjection to the law. Being a ministerial officer the path of duty was plain before you. You strayed from it, and became a volunteer in the effort to arrest the law, and it was successful. Had the property owners who were subjected to this additional tax, considered the law unconstitutional, they could in the proper courts have tested the question, and it was their undoubted right to do so. Your only duty was obedience."

The court imposed a fine of one thousand dollars for the

failure to obey the peremptory writ, it being then impossible for respondent to do so because of his previous disobedience of the law. But it may be said, that here was an act of the Legislature, which he had no right to question, and which he was bound to obey, while in the case before us is an act of the Legislature, which it was the duty of the respondent here to obey. We are free to admit, that if there had been no decision of what the law is by an authority having the right to decide the question, it would clearly have been the duty of the assessors to obey the requirements of section 43. But this Court had decided in *Railway Company* v. *Miller, Auditor,* that no property was exempt from taxation under the Constitution of 1863, except such as might by the Legislature be exempted under the provisions · of the exception in section 1 of article 8. The Governor decided, the provisions of section 1 of article 10, of the Constitution of 1872, were the same as to exemptions of personal property of the kind specified in the alternative writ, as section 1 of article 8, of the Constitution of 1863, and also decided that the principle announced by this Court was applicable to section 1 of article 10. of the present Constitution, and that section 43 exempted the said class of property and therefore was not law, and as the law was complete without that section, said section should be disregarded; and he set the proper machinery in motion to have the law executed as he understood it to be, and as he understood this Court had decided it to be.

Did the Governor have jurisdiction to decide this question and resort to the action to which he did resort, to have the exempted property taxed? We maintain, that if he had the jurisdiction to determine this question, then it was the duty of the assessors to take his decision in the matter as the law, and to obey without question the instructions of the Auditor based on that decision. No one will question the principle, that all inferior officers of courts in all cases, where the court has jurisdiction, are bound to obey the order or mandate of the court, and if the inferior officer so ordered refuse to obey, he will be punished. If the Legislature within its jurisdiction orders a thing to be done by the sergeant-at-arms of either house, the thing must be performed without question, or the

inferior officer will be punished for disobedience. Our Constitution, section 1 article 5, in dividing the powers of government provides: "The legislative, executive and judicial departments *shall be separate* and *distinct,* so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the power of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature." The departments of the government must be kept separate and distinct, and each in its legitimate sphere must be protected. Otherwise the government fails. Haymond, Judge, in delivering the opinion of the Court in *Slack* v. *Jacob,* 8 W. Va. 661, said: "It is essentially necessary and proper that each department of the goverment shall be careful in its action to keep within its legal and constitutional sphere, and not attempt to exercise powers and duties, which under the constitutional appointment of powers belongs to the other, or improperly interfere with the exercise of the rights as well as duties of. the others. Unless this is done the departments must come in hostile contact and collision, and the public interest made to suffer greatly, and the public peace be imperiled, if not broken by the shedding of blood." The legislative department has certain powers, the exercise of which can in no respect be reviewed by either of the other departments. And the same is true of the executive and judicial departments. In other matters the Supreme Court of Appeals is made the final arbiter. In matters of this kind either of the other two departments, having jurisdiction over the subject, may decide what the law is, and that must be regarded as the law, until it is finally decided to be unconstitutional by the Court of last resort, to whom the Constitution equally binding upon each of the three departments has committed the final decision. If that Court should be corrupt or arbitrary in the exercise of its powers thus committed to it, the same Constitution has provided an effectual remedy by resort to the high court of impeachment.

When the Legislature passes an act, it must of necessity decide upon its constitutionality. When the chief executive is called upon to execute a law, he must necessarily decide whether or not it is constitutional, that is, whether or

not it is law; for as Judge Cooley says, in his Constitutional Limitations, page 3 :

"The term unconstitutional law as employed in American jurisprudence is a misnomer and implies a contradiction; that enactment, which is opposed to the Constitution, being in fact no law at all."

"Every department of the government and every official of every department may at any time, when a duty is to be performed, be required to pass upon a question of constitutional construction. Sometimes the case will be such that the decision when made must from the nature of things be conclusive and subject to no appeal or review, however erroneous it may be in the opinion of other departments or other officers; but in other cases the same question may be required to be passed upon again before the duty is completely performed." Cooley Con. Lim. 40.

But if the question is one of that class of cases, that it may properly be passed upon again, before the act required to be done is completely performed, then in a proper case made it may be passed upon by the inferior court, and then by the Constitution it is required that it must be finally decided by the supreme court of appeals, if resort is had to that tribunal. In some cases it may be decided by the court of last resort, without the question being presented to the inferior court. But "when a decree is made in a case by the highest court empowered to pass upon it, it is conclusive upon the parties to the controversy and their privies, who are not allowed afterwards, to revive it in a new proceeding for the purpose of raising the same or any other questions." Cooley Con. Lim. 47.

Now what are the duties of the executive under the Constitution? The Constitution in section 5 of article 7 declares: " The chief executive power shall be vested in the Governor, who shall take care that the law be faithfully executed." This Court in *Shields* v. *Bennett*, 8 W. Va. 80, said: " The provision, which requires that the Governor shall take care that the laws be faithfully executed, does not generally, if ever, make it the duty of the Governor himself to execute the laws. But as the language imports, it makes it his duty carefully to observe the manner in which the different officers

of the government exercise their proper functions, and execute the laws committed to their charge, or their failure to perform such duties; and when they fail to act, or act improperly, if he has the power to remove them from office, to do so; or if he has not, to bring the subject to the cognizance of that department of the government which has the power to remove or punish them." Under this positive requirement of the Constitution the Governor must, in accordance with the oath of office which he has taken, be vigilant and with all the power at his command require the execution of the laws, which the Legislature has passed, because in its wisdom it passes such laws as the good of the State requires and none other; and if the chief executive does not see to their faithful execution, he does not discharge his duty, and the object of the legislative department, to the extent the laws have not been executed, has failed.

By laws of course is meant such acts of the Legislature as are authorized by the Constitution, for if they are unconstitutional they are not laws. In speaking of this requirement of the Constitution, this Court in the case of *Slack* v. *Jacob,* 8 W. Va. 657, said of the Governor: "In order to determine his constitutional duty in this respect, he must of necessity exercise his discretion and best judgment. How else could he perform this constitutional duty except by passing upon the question, as to whether the act of the Legislature was constitutional and valid or unconstitutional and void? When he determined in his mind and conscience that the law was constitutional, it then devolved upon him to execute it."

In the case before us the Governor did not undertake himself upon his own responsibility, as he might have done, to decide that section 43 was unconstitutional, but this Court having by its decision in *Railway Company* v. *Miller, Auditor,* 19 W. Va., construed section 1 of article 8, of the Constitution of 1863, the Governor decided, that the construction put upon that section, which was almost identical with section 1 of article 10, of the present Constitution, was in effect a construction of said section 1 of article 10, of the present Constitution, and that under that construction, section 43, so far as it exempted the articles mentioned in the

alternative writ, was unconstitutional. This he had juris-
diction to decide, and being the chief of the executive
department of the government, the law as thus decided must
be taken as such by the subordinate officers of his depart-
ment and by all other officers, whose duty it is to execute
the law. Its constitutionality can only be tested, when in
its execution it operates upon the citizen, whose right it is to
appeal to the court and by the proper proceeding have it
decided, whether or not the property claimed by him to be
exempt under section 43 is liable to be assessed. If that
court should decide against him, he could then appeal to the
Supreme Court of Appeals, which Court would either sus-
tain section 43, or pronounce it unconstitutional, so far as it
attempted to exempt said property.

Of course the Governor had no right to legislate. He
clearly had no jurisdiction or power to pass a tax-law. If he
did attempt to enact such a law, no subordinate officer would
be required to execute it nor would he at all be bound by it.
It is clear that no taxes can be assessed or levied except in
pursuance of statutory law. But the Legislature-had declared
in the most explicit terms, sec. 48, chap. 12, Acts 1881, that
"All personal property belonging to persons residing in this
State, whether such property be in or out of the State, and
all personal property in the State though owned by persons
residing out of the State, *shall be entered in the personal prop-
erty-book*, and be subject to equal and uniform taxation unless
specially exempted by law," &c. The Governor decided,
as he had jurisdiction to decide, that the portion of section
43, which attempted to exempt certain property, was not
law. And the assessment law being complete in itself with
or without such portion of section 43, the jurisdiction of the
Governor to so construe the law is unquestionable. While
it is the right of the courts to declare that such construction
of the Governor was wrong, it certainly is not the right of a
subordinate executive or ministerial officer to arrest the
execution of the law as construed by the Governor, who had
jurisdiction to decide upon its validity; and he cannot justify
himself in his insubordination, on the ground that the chief
executive had decided wrong. His duty was obedience to the
law as thus construed, and not resistance to lawful authority.

Is it possible that each of the eighty-three assessors in this State can be permitted against instructions to decide for himself what property shall be taxed and what exempted from taxation? If this be so, what would or could be the remedy, by which the proper subjects of taxation could be listed? It would, if they are the sole judges, depend upon the judgment or caprice, it might be, of each assessor what he would assess and what he would refuse to assess; and if one were indicted, that would have no effect upon the others; or it might be that no one would take the trouble to see whether he was doing his duty, and the property would go untaxed, the revenues be diminished, and the guilty assessor be unpunished. There would and could be no uniformity or equality in taxation under such a system. Or if a *mandamus* should issue against one, the Court deciding in that case, that the law was unconstitutional, each of the others might say: "That does not bind me, as I was not a party to that suit." But if it be held, that each is bound to assess the property, which it is determined in the Auditor's office under the eye of the chief executive of the State is subject to taxation, and can raise no question as to the exemption of any of such property, then we will have the revenues of the State collected and equality and uniformity in taxation secured. But if each of the assessors is permitted to decide for himself, what property shall be taxed and what exempted, and defy the instructions of the Auditor made under the decision of the chief executive of the State, then you fail to have taxes equal and uniform, but on the contrary have certain property taxed in one county and exempt in another, as is the case in this State to-day, as appears by the return of the respondent; and such a state of affairs is produced by failing and refusing to obey the instructions of the Auditor. Such a course if upheld and justified by the people of the State, tends directly, not only to insubordination, and the destruction of good government, but to anarchy and confusion.

Among the most important laws which it is the duty of the Governor to execute, are the revenue laws. If the revenues are not collected, none of the departments of the government can live. The revenue is the life of the government; and it is necessary that there should be no delay in its collection.

The machinery for its collection must be kept in motion and must not be stopped by assessors or other inferior officers for the purpose of testing the legality or illegality of a tax-law. It is no concern of the assessor as such whether the tax is illegal or not. It is his duty to obey the instructions of his superiors as to what property is subject to taxation; and if he refuses to assess such property, and a *mandamus* is prayed to compel him to assess such subjects, as he has been by the Auditor under the decision of the Governor instructed to enter for taxation, he cannot shield himself by denying the legality of the instruction. We will not therefore in this case decide the constitutional question raised in the return. We have seen that the respondent as assessor of Brooke has no interest in it, and the parties directly interested, to-wit, the taxpayers of Brooke county are not before the Court. We deem it improper therefore in this case to decide, whether the Governor was right or wrong in his decision; or whether the portion of section 43, referred to in the first part of the return, is unconstitutional or valid. It will be time enough to decide upon the constitutionality of that section, when the proper parties are before the Court for that purpose.

As *mandamus* is a discretionary writ, if it manifestly appeared to us, that the articles enumerated in the alternative writ were under the law exempt from taxation, we should decline to issue the writ; not because the respondent has any right to make such a defence or to rely upon such reason as an excuse for his insubordination, but because we would not be willing to involve the citizens in an expensive litigation, growing out of the imposition of a clearly illegal tax. But we cannot say that it manifestly appears to us, that said articles are exempt from taxation, and that question will not be here decided until a proper case involving the question is brought before this Court. *Waldron* v. *Lee*, 5 Pick. 329; *Smyth* v. *Titcomb*, 31 Me. 285; *State ex rel.* v. *Gaines*, 8 Lea (Tenn.) 594.

The *second* point of the return assumes, that the assessor's duty is completed, when from the lists and information furnished him by the persons in his district, who are required by law to return such property, he shall ascertain all personal property in his district subject to taxation and the value

thereof, and he was only authorized to list the property and assess its value, or to supply any omissions or correct any error in case such person fail to furnish a proper list, or in case the list furnished be in *the judgment* of the assessor incomplete or erroneous in any respect. As we have seen, the assessor was bound to ascertain what property the tax-payers owned on January 1, 1884, that was embraced in any of the classes mentioned in the alternative writ; and he had no discretion to omit from his entries any of such articles. The reason given on this point cannot avail him.

The *third* point in the return attempts to raise the objection, that it is too late for the peremptory writ to issue, because, when the alternative writ was served on him, he had given a statement of the aggregate value of all personal property in the county of Brooke, as appears from his personal property-book, to the county court, and said court at its levy-term in May, 1884, had upon said statement laid the county-levy. This point shows no reason against the issuing of a *mandamus*, because he had until the first day of July to deliver his books to the clerk of the county court, and had not returned them. Even if he had, it is by no means certain that that fact would excuse him, because, as we have seen, it was his own fault that his duty was not performed. *People* v. *Salomon*, 54 Ill. 39.

The *fourth* point in the return gives as a reason why the *mandamus* should not issue, that in all the acts required of him and performed in assessing the personal property in the said county of Brooke and the values thereof and entries made thereof he acted judicially, and cannot be controlled by *mandamus*. *Mandamus* is the proper remedy to compel an assessor to assess property which is liable to taxation. *People* v. *Salomon*, 54 Ill. 39; *State* v. *Whitworth*, 8 Lea 594; *Hyatt* v. *Allen*, 54 Cal. 353; *Baldwin* v. *Maxwell*, 40 Md. 273; *State ex rel. Cincinnati*, 19 Ohio 178. While it is true the exercise of judicial discretion will not be controlled by *mandamus*, yet it is equally true that *mandamus* is proper to compel the exercise of discretion. The assessor has no right to decide against instructions what kind of property is liable to taxation; after ascertaining the taxable property under such instructions and the value and ownership thereof his discretion ceases, and it

then becomes his clear duty to enter the same on his personal property-book.

The *fifth* point in the return is that the statute, section 79, chapter 12, Acts 1881, requires the assessor to deliver a copy of his personal property-book to the clerk of the county court on or before the first day of July, 1884, and that it will be impossible for respondent to comply with the requirements of the alternative writ within that time. The writ was issued on June 6, inst., and was served on the same day. There remained twenty-four days before July 1, in which to attempt at least to obey the same, and we cannot say that that was not time enough for him to have obeyed the writ. Whose fault is it, that the time was so short? Besides, the requirement of the statute, that the book shall be delivered on or before the 1st day of July, is directory. It would be strange indeed, if by the fault of the assessor he did not have his book ready by July 1, it could not afterwards be received, and no taxes in the county could be collected for the year. The statute is clearly directory. *Pond* v. *Nigus*, 3 Mass. 230; *Williams* v. *School District*, 21 Pick. 75; *Hart* v. *Plum*, 14 Cal. 155; *Smith* v. *Crittenden*, 16 Mich. 152; *Railway Company* v. *County*, 12 Neb. 396; *State* v. *Mining Company*, 15 Nev. 385; *Hill* v. *Wolfe*, 28 Ia. 577. If the writ issues in this case, the respondent will be compelled to obey it, and shall not return his books until he has done so.

The *sixth* and *seventh* points we have disposed of in the consideration of the *first*. The *sixth* point furnishes a strong reason why the writ should issue.

The *eighth* point is that the relator by his laches has deprived himself of his right to have a *mandamus*. The relator is Auditor of this State and personally has no interest in this proceeding. He is now evidently striving to do his duty with whatever negligence he may be charged in the past. The right of the State to have her revenue assessed and collected cannot be lost by the laches of her agents. *Haehlen* v. *The Comm.* 13 Penn. St. 617.

The *ninth* point of the return has also been disposed of in the consideration of the first.

The *tenth* and last point of the return was not mentioned in the argument. There is nothing in it, as the relief there

referred to is that of the taxpayer. Nothing in the return contained is in law sufficient to prevent the issuing of the writ prayed for, and the *peremptory writ of mandamus* is therefore ordered to issue.

PETITION ALLOWED.　WRIT ISSUED.

# WHEELING.

