### 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CHESTERFIELD COUNTY V. HALL'S EX'OR.

### MARCH 19th, 1885.

1. JURISDICTION—*County courts.*—A county court acting under the statute authorizing county courts to purchase salt, is exercising a special authority, and it must appear from the record that the justices were summoned, or that a majority were present, when a bond was executed for salt purchased, or the bond will be held to be null and void. *Dinwiddie county* v. *Stuart, Buchanan & Co.*, 28 Gratt. 626.

2. IDEM—*Idem—Presumptions.*—Where a court of general jurisdiction has conferred upon it special powers by special statutes, which are only exercised *ministerially*, and not *judicially*, no presumption of jurisdiction will attend its judgments, and the facts essential to the exercise of the special jurisdiction must appear on the face of the record. *Pulaski county* v. *Stuart, Buchanan & Co.*, 28 Gratt. 872.

Error to the judgment of the circuit court of Chesterfield county rendered May 20th, 1882, on an appeal from the county court of said county, wherein a judgment had been rendered October 22nd, 1880, on an appeal from the board of supervisors of said county, on a claim presented to the said board by L. L. Lester, the executor of Wilkins Hall, deceased, founded on a bond alleged to have been issued by the said county court on the 9th day of June, 1862, for $2,000, loaned to the said county by the said Hall, to purchase salt, under the act of the general assembly, passed May 9th, 1862. The board refused to pay the said claim. Upon trial upon the petition of Hall and the answer of the said county, the jury returned their verdict in favor of the county, and Hall's executor appealed to the cir-

cuit court, where the said judgment was rendered reversing the judgment of the county court, and the said county obtained a writ of error to this court.

The opinion states the other facts.

*B. A. Hancock* and *F. W. Christian*, for the plaintiff in error.

*Meade Haskins*, for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This is a writ of error to an order of the circuit court of Chesterfield, entered 20th day of May, 1882, in a proceeding on appeal from the county court of Chesterfield, wherein L. L. Lester, executor of Wilkins Hall, deceased, was appellant, and the county of Chesterfield was appellee. The record presents the following case:

On the 18th December, 1878, L. L. Lester, as the executor of Wilkins Hall, deceased, presented for payment to the board of supervisors of Chesterfield county, a claim for $2,000, with interest from 9th of June, 1862, which he alleged to be due to him by virtue of a bond of the said county, which it was claimed the said county had issued in the year 1862, under the provisions of an act of the general assembly of Virginia, passed May 9th, 1862, and known as the "Salt Act;" which said bond it was claimed the said county had executed and delivered to the said Wilkins Hall in his lifetime. The board of supervisors of Chesterfield county, being of opinion that there is no liability on the county, by reason of the said asserted claim, rejected and refused to pay it: from which decision and action of the said board of supervisors, the said Lester, executor, &c., took an appeal to the county court of Chesterfield. In the said court the case was tried before a jury; who, after a great deal of evidence introduced, and sundry instructions given by the court, and argument of counsel, came into court and ren-

·dered a verdict in favor of the county. The counsel for the plaintiff, Lester, executor, thereupon moved the court to set aside the verdict, and grant them a new trial; but the court overruled the motion, and entered judgment for the defendant county, pursuant to the verdict of the jury. From this judgment of the county court, the said Lester, executor, took an appeal to the circuit court of Chesterfield; which said circuit court reversed the said judgment of the county court, set aside the verdict of the jury, and ordered a new trial to be had in the said circuit court. From which said action of the circuit court the case is now here, by appeal allowed to the said county of Chesterfield.

This case has arisen under section 1 of an act of the general assembly of Virginia, passed May 9th, 1862, entitled "an act to authorize the county courts to purchase and distribute salt amongst the people, and provide payment for the same;" which said section is in the following words:

"§ 1. Be it enacted by the general assembly, That the courts of the several counties of this commonwealth, when a majority of the acting justices of the county is present, or when the justices have been summoned to attend to act upon the matter, are hereby authorized and empowered to order the purchase, for the use of the people of said counties respectively, such quantities of salt as the said courts may deem necessary, and to provide for the payment of the same, by county levies, or by loans negotiated upon the bonds of said counties, to be redeemed by county levies or otherwise."

Numerous cases have arisen since the close of the late civil war, upon contracts entered into by the county courts of this commonwealth under the authority of this act; and the case of *Dinwiddie County* v. *Stuart, Buchanan & Co.*, 28 Gratt. 526, and the case of *Pulaski County* v. *Stuart, Buchanan & Co.*, 28 Gratt. 872, are directly and pointedly conclusive of the case under review. In the *Dinwiddie* case there was a bond of the county, under seal of the county court, and in legal form and effect.

Judge Christain, in delivering the opinion of the court, said, "But this paper is invalid as a *bond of the county*, because it does not appear in the record, that at the court at which it had been executed the justices had all been summoned, or that a majority were present. * * It cannot be *presumed* in a case like this, that the justices had been summoned: this ought to appear affirmatively, and the record should show that a majority were present. The court was acting upon a matter of special jurisdiction, conferred by a special statute, and upon a matter outside of its general jurisdiction. The case does not, therefore, come within the doctrine declared by this court in *Ballard et als* v. *Thomas & Ammon*, 19 Gratt. 14. Here the jurisdiction was special, fixed by a special statute, and must be exercised in accordance with the provisions of the statute; that is, either when the justices have all been summoned, or when a majority were present. The proceeding in this case (the execution of a bond) *not being a judicial proceeding* within its ordinary jurisdiction, must be shown affirmatively to be *strictly* within the provisions of the statute within which the proceeding was had."

In the *Pulaski* case, (*supra*) the same Judge, *Christian*, said, for the court, "While it is true that the county courts, which were clothed by the act of May, 1862, with the power to purchase and distribute salt, were courts of general jurisdiction, yet such power did not belong to it as a court of general jurisdiction, but was a special summary power, conferred by statute. It was a power *purely ministerial*, and was not exercised judicially, according to the course of the common law. * * Certainly the power to purchase salt, and bind the people of the several counties for its payment, was not judicial power, to be exercised according to the course of the common law. It was a special and extraordinary power, to be exercised ministerially and not judicially. It was natural and proper, in the highest degree, that the legislature should throw around the exercise of this extraordinary power, by which the county courts

could bind the people of the several counties of this common-wealth to the payment of millions of dollars, all the checks and restraints possible, to secure its judicious exercise. In a matter like this, purely ministerial, and in which all the people of the counties were interested, the justices of the peace were, in a certain sense, the representatives of the people, and as such were to judge both of the necessity of appropriating the people's money, and the extent of such appropriation. To give validity to such action of the county court, the conditions prescribed by the statute must be complied with, *and it must so appear upon the record.* The facts essential to give the court jurisdiction must appear affirmatively, and *no presumption* of jurisdiction will attend the judgment."

In the case before us, there is no pretence that all the justices had been summoned to attend the June term, 1862, of the county court of Chesterfield, "*to act upon the matter*" of order-ing the purchase of salt for the use of the people of Chesterfield county, and to provide for the payment of the same by county levy, or by loans, to be negotiated upon the bonds of the said county, &c., as specifically provided in the statute known as the "Salt Act"—already cited.

But it is contended by the appellee here, (who was appellant in the circuit court,) that a majority of the acting justices was present, and constituting the county court of Chesterfield.

On the 9th day of June, 1862, when it was "Ordered, That bonds of this county, to the amount of nine thousand dollars, bearing six per cent. interest from date, be issued for the pur-chase of salt, said bonds to be issued and signed as the bonds heretofore issued, and payable one year after date."

At a court held for Chesterfield county, May 13th, 1861, the following order was made: "Be it ordered that the bonds pro-posed to be issued in the foregoing report, this day unanimously adopted by the court, shall be signed by the presiding justice, and countersigned by the clerk of the court, and to issue in such sums as the said officers may think advisable from time to

time, and that the clerk shall keep a register of all the bonds issued, their respective amounts, and the agents or parties to which they have been delivered."

The clerk of the county court certifies that the records in his office show that at the June term, 1862, of the said county court of Chesterfield county, there were twenty-four acting justices of the said county. Of these, one, William B. Chalkley, had accepted a commission as postmaster, under the Confederate states government, and the county court instructed the jury, at the request of the plaintiff, (who is the appellee here,) that the said Chalkley could not be regarded as an "acting justice." Of this the plaintiff could not complain, though the record shows that Chalkley continued to act as a justice of the county. This reduced the number of acting justices to twenty-three, and the plaintiff below claimed that the record showed that twelve were present on the 9th of June, 1862, when the order was entered on which this asserted bond was based.

The record shows that the county court of Chesterfield county, at its session on the 9th of June, 1862, transacted a great amount and variety of business, and that during that day the composition of the court—both as to numbers and individuals—changed three times. It began with three justices, and transacted a great deal of business, and then the following entry appears: "Present—Gentlemen Justices L. L. Lester, Healey Cole, W. Tucker, R. L. Jones, V. Markham, F. G. Hancock, William B. Gates, H. R. Graves and Edward Williams."

"Ordered, That James H. Cox and Alex. Sims be and they are hereby appointed commissioners to obtain from the salt works, in Washington county, the proportion of salt which the law authorized them to furnish this county; and that having obtained the same, they are further authorized to select a place or places for deposit, and by advertisement notify the public of the place or places for distribution.

"Ordered, That Alex. Sims, having given bond as the law

requires, be appointed agent of this county to obtain from the salt works the quantity of salt to which this county is entitled.

"Ordered, That bonds of this county, to the amount of nine thousand dollars, bearing six per cent. interest from date, be issued for the purchase of salt; said bonds to be issued and signed as the bonds heretofore issued, and payable one year after date."

This record affirmatively shows that the court was composed of the nine justices who are recorded by the clerk as being "*Present;*" and, upon the legal and logical maxim, " *expressio unius, est exclusio alterius,*" it not only fails to show that any others than those named were present, but it excludes the inference.

Nevertheless, it is claimed by the appellant that it is to be *presumed* that the three justices who are recorded as being "*present*" at the opening of the court on the 9th of June, 1862, were likewise *present,* at the reorganization of the court, to take action under the "Salt Act." This, it seems, is a violent presumption in the teeth of the record of those who were " Present," and of the fact, shown by the record, that the court was organized *four different times* on the 9th of June, 1862, according to the requirements of the large and varied business of the court on that day. But we have already quoted from the opinion of this court, in the case of *Dinwiddie County* v. *Stuart, Buchanan & Co.*, and repeated in the case of *Pulaski County* v. *Stuart, Buchanan & Co.*, that no *presumption* can come *in aid of the record* of the court, acting under the special summary jurisdiction conferred by the statute; " that to give validity to such action of the county court, the conditions prescribed by the statute must be complied with, and it must so appear upon the record. The facts essential to give the court jurisdiction, must appear affirmatively, *and no presumption of jurisdiction will attend the judgment.*"

The plaintiff below contended, and attempted to show, that there were only seventeen "acting justices" in the county of Chesterfield on the 9th of June, 1862. To do this, he at-

tempted to prove that one of them, Robert S. Winfree, was dead at that date, but he failed to prove it; and the certificate of the clerk, already cited, proves that he was alive and one of the twenty-four acting justices of Chesterfield county on that date. It was proved that Walter G. Clarke, Charles B. Vaden and Joseph T. Mason entered the Confederate military service early in 1861, tho' it was proved that W. G. Clarke acted as a justice after he entered the army. Two others—A. H. Drewry and R. H. Watkins—entered the Confederate service in December, 1861, but they never went out of the county of Chesterfield; they were stationed at Drewry's Bluff, a few miles only from the court-house of the county, and both of them regularly attended the sessions of the county court. But the convention which sat at Richmond, November 23rd, 1861, (see Acts 1861-2, Ordinance No. 90), passed an ordinance expressly providing that no one holding an office under the State of Virginia, shall be deemed to vacate the same by entering the military service of the Confederate States. This ordinance, evidently, was intended to encourage enlistment, and Drewry and Watkins entered the service after its passage and under its provisions. So that, granting that Chalkley vacated his office by becoming postmaster; that Winfree was dead; and, that Clark, Vaden and Mason vacated their office by entering the Confederate service, and are not to be considered "acting justices"—this would be *five* from *twenty-four*, leaving nineteen—of which nine would not be a majority.

This case was tried in the county court, by a jury, upon an issue made up by petition and answer, which expressly denied the execution and delivery of the bond as the obligation of the county, and denied the alleged loan to the county of the money asserted as the consideration of the bond. There was a great mass of testimony—much of it conflicting, and much of it tending to show that the bond asserted never was executed and issued by the county of Chesterfield, and the money had never been loaned to the county; and that if so, it had been

paid, as the county was always able to pay it. The bond is incomplete on its face: it is without date of execution, and without date of payment: there is no *registry of it*, as the order under which it is claimed to have been issued expressly required. It is claimed to have been issued June 9th, 1862, and was never presented by Wilkins Hall, who died in the fall of 1864; and his executor, L. L. Lester, kept it until 1878—a period of sixteen years, and never presented it for payment or said a word to any authority of the county about his having any such claim against the county; and never presented it for payment until after the death of the presiding justice, James H. Cox, during the war, and who attended to the whole business of purchasing the salt, and who was well known to know all about the bonds which had been issued by the county to pay for it, and which were required by the order of the court to be signed by him, and countersigned by the clerk, whose death, likewise, had taken place before this claim was exhibited to the light of day. The claim was a suspicious one, in all its aspects, and the jury was well warranted in finding their verdict for the county; and we think it was error in the circuit court to set aside the verdict which had been confirmed by the trial court.

There being no day of payment named in the bond, it is (as the appellee claims) payable on demand, with interest from June 9th, 1862: yet the order of June 9th, 1862, under which it is claimed it was issued, expressly provides that the bonds to be issued under its provisions, shall be made payable one year after date. This bond is, therefore, not a good execution of the power conferred by the order, was issued (if at all?) without authority; and no recovery can be had on it as a bond. Story on Agency, 63–73; *Dinwiddie County* v. *Stuart, Buchanan & Co.*, and *Pulaski County* v. *Same; supra. Batty* v. *Carswell*, 2 Johnson's L. Reports, p. 48: *Tate & Hopkins* v. *Evans*, 7th Missouri, 419. In *Batty* v. *Carswell, supra*, the authority was to execute a note for $250, payable in six months; the agent gave the note payable in sixty days. The court held that the prin-

cipal was not bound. But, even beyond this, as this bond given June 9th, 1862, imports a Confederate contract, it must be scaled as such, under the ruling in the *Dinwiddie* case; and the difference between scaling it as of June 9th, 1862, and twelve months after that date, is as *one and a half* to *eight.* This shows the essential necessity of the day of payment of the bond to have been made in conformity to the express requirement of the order of court that it should be payable one year after date. And, for this alone, the judgment of the circuit court is erroneous in scaling the bond as of the value of Confederate money June 9th, 1862.

But, for the reasons set forth at length, we are of opinion that the circuit court erred in disturbing the verdict of the jury and reversing the judgment of the county court, and that the judgment of the county court must be affirmed, and that of the circuit court reversed and annulled.

LACY, J., dissented.

JUDGMENT REVERSED.