# CHARLESTON.

### COUNTY COURT *v.* BRAMMER, ASSESSOR.

Submitted October 11, 1910.    *Decided October 13, 1910.

1. MANDAMUS—*Ground—Compelling Extension of Tax Levy.*
    *Mandamus* will lie to compel a county assessor to extend a levy laid by a county court in the exercise of its general jurisdiction, unless the same has been judicially determined to be illegal.

2. JUDGMENT—*Collateral Attack—Judgment Laying County Levy.*
    A county court which lays a county levy is not a special tribunal established for that special purpose, but for that purpose is a court of general jurisdiction; and its act in laying such levy, though not exercised in the usual from of judicial proceedings, is judicial in its nature, and cannot be attacked in any collateral proceeding.

3. SAME.
    Although the special bridge levy involved in this case was laid by the county court pursuant to section 2, chapter 9, Acts 1908, as amended by chapter 66, Acts 1909, and the rules and regulations prescribed thereby, it was nevertheless an act done in the exercise of its general jurisdiction.

4. BRIDGES—*Levy—Special Bridge Tax—Statutory Provisions.*
    The special bridge levy laid by the county court of Pleasants county in the year 1910, pursuant to said section 2, chapter 9, Acts 1908, as amended by chapter 66, Acts 1909, is not illegal and void because it laid no such levy in the years 1908 or 1909.

---

*Opinion filed October 25, 1910.

5. ·STATUTES—*Construction—Taxation.*

While the general rule is that statutes conferring powers of taxation should be construed with strictness, they should not be so strictly construed as to defeat the manifest purpose or intent thereof. All that this rule requires is that the statute be confined to such subjects or applications as are obviously within its terms and purposes.

6. BRIDGES—*Taxes—Levy—Construction of Statute.*

Applying this rule, the legislature by enacting said section 2, chapter 9, Acts 1908, as amended by chapter 66, Acts 1909, did not intend to limit the right to lay special bridge levies to those counties alone, which had laid such levies for 1908, or for 1909, but to prescribe a limit of time within which all counties, not otherwise disqualified by the act, might begin and continue the same.

·7. MANDAMUS—*Illegal Laying of Levy—Remedy of State Tax Com-missioner.*

· The remedy of the State Tax Commissioner in such cases, is not by instructions to the county assessor, to disregard a levy laid by a county court, but by some appropriate process, as by *mandamus,* or a like process in a court of competent jurisdiction.

Application by the County Court of Pleasants County for a writ of *mandamus* against Ira E. Brammer, Assessor.

·*Writ Awarded.*

*G. D. Smith, Craig & Wells,* and *Clyde B. Johnson,* for petitioner.

*T. C. Townsend* and *Frank Lively,* for respondent.

MILLER, JUDGE:

The alternative writ, pursuant to the prayer of the petition, commanded that defendant, as assessor, forthwith extend in the land and personal property books, for the year 1910, the amount of taxes that will be due from each person assessed with property in said county, by virtue of the orders of levies made and entered by the petitioner on August 23, 1910, and among them a special bridge levy of sixteen cents on each one hundred dollars valuation in said county, or that he show cause before this Court why he refused to do so.

Defendant, in his return to the alternative writ, admits the lawfulness of all of said levies except said special bridge levy; admits his duty, as assessor, to extend the same; denies that he has ever refused to do so; but on the contrary is proceeding therewith, and will so continue until the work is fully completed.

He justifies his refusal to extend said special bridge levy on the ground of its alleged illegality. He admits that he is a mere ministerial officer charged with the duty of extending all *lawful* levies made by petitioner, but says it is his duty also to obey the instructions of the State Tax Commissioner, in so far as said instructions are not contrary to law, and that having been advised by said State Tax Commissioner that said special bridge levy is wholly illegal, null and void, he ought not to so extend the same and had declined to do so and would not make such extension unless otherwise commanded by this Court.

The first question presented is, what authority is given by law to the State Tax Commissioner to control an assessor in the discharge of his ministerial duties to extend county levies? Section 30, chapter 39, Code 1906, relating among others to the duty of the assessor with respect to county levies provides: "When an order is made for a levy, the clerk of such court shall, within five days thereafter, make out and certify so many copies thereof as may be necessary and deliver one of the said copies to the officer who according to law is to collect such levy and charge the said officer with the amount of the levy in the proper account book of the county, and shall also deliver one of the said copies to the assessor, or each of the assessors, if there be more than one for the county. The assessors (or each assessor) shall immediately in the several copies of his land and personal property book, extend in a separate column what may be due from each person by virtue of such levy." The statute does not say, in the language of respondent's return, that it shall be his duty to immediately extend "all *legal* levies laid by the county court." He is not given authority to judge of the legality of such levies so made and certified to him, and has no discretion in the premises. *State* v. *Buchanan*, 24 W. Va. 362. While *mandamus* is sometimes said to be a discretionary writ, to be withheld where it manifestly appears that it would operate to execute an illegal act, in this country "it is generally considered as more of a writ of right, to be issued in cases

. to which it applies, and is considered to be an ordinary action at law, and prosecuted in all respects as an ordinary action." Merrill on Mandamus, section 62. And it will not be denied where, as in this case, the illegality of the levy involved has not been judicially determined, and it does not manifestly appear that the levy is illegal. *State* v. *Buchanan, supra,* 384. True this Court, in *Payne* v. *Staunton,* 55 W. Va. 202 (Syl. pt. 4), raised the quaere, whether a ministerial officer can refuse to perform an act required by an unconstitutional statute, before it has been judicially declared invalid, and at page 207, Judge BRANNON gives expression to the opinion that such ministerial officer may urge as a defense in *mandamus* the unconstitutionality of an act, and cites some cases which seem to support that proposition; but we have not such a case before us for decision.

But do the instructions of the State Tax Commissioner constitute good defense? It is conceded that defendant was not bound. to respect these instructions if contrary to law. The authority of the State Tax Commissioner, as provided by section 2, chapter 29, Code 1906, is: "To see that the laws concerning the assessment and collection of all taxes and levies, whether of the state or of the county, district or municipal corporation thereof, are faithfully enforced, * * * * * and give such information and require such action as will tend to produce full and just assessments throughout the state, and the diligent collection of all taxes and levies, including license and collateral inheritance taxes, and of fines." Whether his authority under this law extends to directing. an assessor respecting his duties to extend county levies, seems to us depends upon the nature and effect of the order of the court laying such levies, and perhaps also upon the provisions made by law for superseding, or reviewing the order of the court; and whether such provisions are exclusive or merely cumulative of other remedies. If the act be judicial in its nature and done in the exercise of the general jurisdiction of the court, the law is that it is not open to collateral attack. The rule is different, if the action, though by such a court, be in pursuance to some special jurisdiction given by a special statute, when if not done in conformity to the statute, it must be regarded void and open to attack whenever any right is asserted under it. *Dinwiddie*

County v. Stuart, Buckhannon & Co., 28 Grat. 526; Pulaski County v. Stuart, Buckhannon & Co., Id. 872; Ballard v. Thomas & Ammon, 19 Grat. 14; Shelton v. Jones, 26 Grat. 898; Cook, Sheriff v. Hays, 9 Grat. 142; Chesterfield County v. Hall, 80 Va. 321.

In Ballard v. Thomas & Ammon, followed in some of the other cases cited, it is distinctly held that the county court which lays the county levy is not a special tribunal erected for that special purpose, but a court of general jurisdiction, and that its act in laying the levy cannot be questioned in any collateral proceedings. In this case Judge Joynes, at page 22, in support of his opinion says: "For while in the assessment of the tax the county court exercised power which does not come within the ordinary scope of judicial power, in the adjudication of the debts chargeable upon the county, on which rests the right of the creditor to proceed against the sheriff and his securities, the court exercises a power which is *purely judicial in its nature*, though it is not exercised in the usual form of judicial proceedings. The action of the court, in the exercise of *such a power*, cannot be questioned in a collateral proceeding." *Pulaski County* v. *Stuart, Buckhannon & Co.*, cites the *Ballard-Thomas Case*, approvingly, differentiating it, and cites and discusses numerous other cases, state and federal, supporting the opinion. The jurisdiction of the county court to lay and disburse county levies, is given by the constitution. Art. 8, section 24. True this article of the constitution says, "under such regulations as may be prescribed by law." Nevertheless such levy is made in the exercise of a general jurisdiction conferred by the constitution and the statutes made in pursuance thereof. Section 29, chapter 39, Code 1906.

But does the fact that this special bridge levy was laid pursuant to section 2, chapter 9, Acts 1908, as amended by chapter 66, Acts 1909, and under the rules, regulations and limitations prescribed thereby, effect its character as a judicial act? Said chapter 9, Acts 1908, according to its title was "An act to regulate the rate and manner of laying levies for taxation in counties, magisterial and school and independent school districts, and municipal corporations, and to provide penalties for the illegal expenditure of public moneys, incurring of illegal obligations and the laying of illegal levies by any tax-levying body,

and for the distribution of a portion of the school fund." We see nothing in these acts affecting the general nature of a levy made by a county court. While they do impose certain limitations upon its powers of taxation, and make its right to lay a special bridge levy depend on the existence of certain facts, yet in making such a levy it does so in the exercise of its general jurisdiction, conferred by general law, and not in the exercise of special authority conferred by special statute, where nothing is presumed, but every fact essential to confer jurisdiction must affirmatively appear.

The third proviso of section 2, of the Act of 1908, which covers the controversy here is as follows: "Provided, third, that the county court of any county having no debt, bonded or funded or otherwise, and which does not lay a levy exceeding that prescribed in the first proviso of this section, may in the year nineteen hundred and eight lay a levy not exceeding ten cents on each one hundred dollars of valuation of the taxable property of the county, to be called special bridge levy, for the purpose of building bridges; and such levy may be continued for four successive years after said year of nineteen hundred and eight. The fund arising from such levy shall be used for the purpose herein designated, and no other." As amended by the Act of 1909, "twenty cents" was inserted in place of "ten cents"; and "nineteen hundred and eight" was changed to "nineteen hundred and nine," thereby raising the rate for such levy from ten to twenty cents, and extending the time for beginning and continuing the levy one year. The act of 1909 added the following to said proviso: "And said special bridge levy can not be laid in the year one thousand nine hundred and nine, if seventy-five per cent. of the special bridge levy for the year one thousand nine hundred and eight, has not been expended during the year one thousand nine hundred and eight for the purposes of building new bridges." The point is made that petitioner laid no special bridge levy in 1908, pursuant to the Act of 1908 and none in 1909, pursuant to the amendment of that year, and not having begun to levy for that purpose in either of those years it was not lawful for it to begin in 1910, and continue thereafter to lay such levy and that the court was therefore wholly without jurisdiction in the premises, and its act in laying said levy in 1910 wholly void, deny-

ing it the right to *mandamus.* Having concluded . that the
order of the county court is not open to collateral attack, two
members of the court are of the opinion that we should not
decide this question; but a majority think otherwise. Those
of us who are of this opinion are compelled to negative the
proposition.

While the general rule is, as argued by counsel, to construe
acts conferring power of taxation 'with strictness, 2 Lewis'
Sutherland Statutory Construction, pp. ˙ 1008-9-10; *State ex
rel.* v. *County Court,* 60 W. Va. 339, 348, yet the court should
not construe an act so strictly as to defeat its manifest pur-
poses and intent. According to the text writer just cited,
Vol. 2, section 518, all that this rule requires is that the stat-
ute "be confined to such subjects or applications as are ob-
viously within its terms and purposes."

What then was the manifest purpose or intent of these enact-
ments? Was it to limit the right of levy to these counties
alone, that might in the year 1908, or in 1909, be in a condi-
tion to lay such special bridge levy in the one or the other of
those particular years; or was it to confer the right on all,
within the period prescribed, to thus provide for necessary
bridges? We think the acts clearly manifest the latter inten-
tion. It is argued that the amendment of 1909 manifests a
contrary intention, by changing the year for beginning such
levy, and denying the right to lay such levy in 1909, if seventy-
five per cent. of the levy for 1908 had not been expended during
that year. This provision was evidently intended to cover a
condition then existing in some counties where levies had been
made in 1908, the money collected and not devoted to the pur-
poses for 'which it was levied; and that the change in the year
was intended to lengthen out the period within which such
levies might be begun and continued. While the statute de-
prived counties of the right to levy for 1909 if they had lev-
ied and not expended the money as prescribed, it does not say
they may not lay such levy in 1910, or in any subsequent year,
if not otherwise disqualified by the limitation imposed. It
seems clear to us that the purpose of this statute was, in view
of the changes made in the general law which 'were thereafter
to apply, the legislature intended to give to all the counties
a limited time within which to make provisions for bridges by

these special levies. This construction is not inconsistent with the letter or spirit of the statutes, and it seems to us gives to the law the general ·'application ·which a general law should ·have. Any other construction would be unreasonable, and be so inconsistent with the object and purposes of the law that it should not prevail.

The existence of the essential facts entitling the county court to do so were necessarily involved and decided by the court in favor of the right to make said levy when it determined to lay the same. The court necessarily decided that it had no debt, bonded or funded or otherwise, denying to it authority to impose the bridge tax, and in our opinion this judgment, upon the principles of the cases cited, can not be impeached collaterally.

But suppose its judgment be wrong, how may it be corrected by a taxpayer or by the State Tax Commissioner? Section 31 of the same chapter provides that upon the petition to the circuit court of not less than twenty-four persons interested in reversing the same, the order for any such levy may be superseded, and if upon the hearing of such petition the court be of opinion that the order is contrary to law, it may reverse the same. And the county court may without waiting for a decision on such writ of *supersedeas,* rescind its order, and order a levy according to law; and if the decision of the circuit court be that such levy is contrary to law, the court may ·in like manner order a levy according to law.

But if twenty-four persons interested therein are not found to take such proceeding how may the individual taxpayer be protected against an unlawful tax? It has been held that said section 31, chapter 39 of the Code, does not by its terms take away equity jurisdiction to enjoin an illegal tax, if grounds of equity jurisdiction, other than the mere illegality of the tax exist, as multiplicity of suits, etc., but is merely cumulative of other remedies. *Railway Co.* v. *Miller,* 19 W. Va. 408; *Wells* v. *Board of Education,* 20 W. Va. 157; *Williams* v. *County Court,* 26 W.·Va. 488; *Winifrede Coal Co.* v. *Board of Education,* 47 W. Va. 132; *Copper Co.* v. *Scherr, Auditor,* 50 W. Va. 533, 538. And ·when a taxpayer cannot avail himself of the remedy by injunction, to restrain the collection of

an illegal tax, he may in an action at law, sue to recover back the amount paid.

But has the State Tax Commissioner, in the exercise of his official functions any remedy? We answer, yes, but not the one undertaken in this case. He may by proper process in the courts enforce the performance by inferior officers of their duties in the premises; but in a case like this, can it be that by mere instructions to an assessor he can anticipate the judgment of a court of· competent jurisdiction thereon, and set aside and disregard an order of the county court? We think not. It has been held that *mandamus* may be employed by the State Tax Commissioner in such cases. *State ex rel.* v. *Graybeal,* 60 W. Va. 357; *State ex rel.* v. *County Court Id.* 339; *Dillon* v. *Bare and Carter, Id.* 483. We think this his only and proper remedy in cases like the one we have here.

Our opinion therefore is that the mandatory writ was properly awarded in this case.

ROBINSON, .President, and POFFENBARGER, Judge, concur in the award of the writ upon the ground that the assessor must perform the mere ministerial duty of extending the levy and cannot attack the legality of the levy by refusing to extend it. So far as the syllabus and opinion go beyond this, they do not concur. On the question of .the legality of the tax levy, and all other matters discussed, they would express no opinion. Decision upon the one ground excludes consideration of the other.

WILLIAMS, JUDGE, (*concurring*) :

I concur in the conclusion that it was proper to grant the peremptory writ, because the relator has shown a clear legal right to it, and for no other reason. A majority of us are of the opinion that the statute gives the county court the right to lay a special bridge levy in 1910, notwithstanding it did not lay such levy in either the year 1908, or 1909. This is sufficient reason for issuing the writ. But the opinion decides other questions which I do not think we are called upon to decide, and to the correctness of which I can not assent. These questions are of vital importance concerning the powers, rights and duties of state tax commissioner. In creating this highly important office, I think it was clearly the purpose of the legis-· lature to make it the chief head of the entire system for the as-

sessment, levying and collection of taxes throughout the state. Section 2 of chapter 29, (Code 1906) makes it the duty of the state tax commissioner to see that all the laws relating to all these matters are faithfully administered; his office is a branch of the executive department of the state government. In my judgment it is his province to see that county courts, and all other tax levying bodies, as well as assessors, keep within the prescribed limits of the law. County courts, as now constituted, are not judicial courts; they do not hear and decide causes. *Arkell* v. *Board of Commissioners,* 41 W. Va. 471. They act ministerially, not judicially, and are performing a delegated legislative function when levying taxes. 1 Cooley on Taxation 46. True, section 24, article VIII of the Constitution, vests county courts "with authority to lay and disburse the county levies." But they are not given unlimited power. The same section reserves to the legislature the right to regulate this power, and it has been the policy of the legislature to regulate it ever since the formation of the state, by prescribing, not only the purposes for which levies may be laid, but also the maximum of rate. Consequently, a levy laid for a purpose not authorized by law, would be void for want of authority to make it, and no one is compelled to render obedience to an act, or judgment, that is void. County courts are of special and limited jurisdiction, and no presumption is indulged in favor of its jurisdiction which must appear from the record of its proceedings. *Cunningham* v. *Squires,* 2 W. Va. 422; *Despard* v. *Pleasants Co.,* 23 W. Va. 318; *Mayer* v. *Adams,* 27 W. Va. 244; *Goshorn's Ex'rs.* v. *County Court,* 42 W. Va. 735. It is not only limited by statute as to the purposes, and amounts which it may levy, but even the time when it may make levies is fixed by law. In fact I know of no other tribunal, denominated a court, that is as much circumscribed and hedged about by statutes as our county courts. If it should make a separate and distinct levy for an unauthorized purpose, such levy would be void and might be assailed collaterally. In fact they are most usually assailed in such a way. The void judgment of even a judicial tribunal of general jurisdiction may be collaterally assailed, and why not the order of a county court, when void for want of jurisdiction?

In the present case the court acted under a statute which cre-

ated a special "bridge levy." This levy was severable, and entirely distinct from the levies for other county purposes; and, therefore, the assessment and collection of such levy could, in nowise, interfere with levies made for other purposes which were legal. Hence, the general doctrine that the courts will not interfere to prevent the collection of a tax on the ground that it is excessive in amount, or because the levy is affected with some species of fraud, or irregularity, does not apply. The bridge levy is not good in part, or bad in part; it is either legal as a whole, or void in toto. The disturbance of it could not, therefore, interfere with the other valid assessments necessary to keep the machinery of the state and county government in motion. Such a distinct and severable tax, if void, can be enjoined without interference with the collection of other taxes lawfully assessed. 2 Cooley on Taxation (3rd. ed.) 1426; *Norwood* v. *Baker,* 172 U. S. 269; *Jones* v. *Holzapfel,* 68 Pac. 511 (Okla.) ; 1 High on Inj., secs. 490-498.

Section 2, chapter 29, Code 1906, reads in part as follows : "It shall be the duty of the state tax commissioner to see that the laws concerning the assessment and collection of all taxes and levies, whether of the state or of any county, district or municipal corporation thereof, are faithfully enforced." This makes it his duty to decide, in the first instance, whether the statute creating the special bridge levy authorized such levy in 1910, when no levy therefor had been made in 1908, or 1909. *State* v. *Buchanan,* 24 W. Va. 362. It was a troublesome question to decide; this Court itself is divided on the proper interpretation of the statute. But he decided that the county court could not lay a bridge levy in 1910, when no such levy had been made in the preceding year; and he so advised the county court. It disregarded his advice; he then instructed the assessor, his subordinate officer, not to extend the levy. According to the law of the *Buchanan Case, supra,* he acted in the line of his duty. It was also held in that case that it was the duty of the assessor to obey the instructions of the auditor. He then occupied a similar relation to the auditor that he now occupies to the state tax commissioner. Under these conditions what was the assessor to do? . I think he was justified in obeying his superior officer. He did so, and it did not, therefore, become necessary for the state tax commissioner to apply to the

court for *mandamus*. The bridge levy 'was distinct from the other county and district levies; consequently the failure to extend it could occasion no interference with the necessary county levies. The fact that he may sometimes err in judgment as to the law, does not affect the question of the duty of the assessor to obey, in the first instance. If he does so obey, as he did in this instance, it becomes unnecessary for the state tax commissioner to resort to *mandamus*. Respondent does not set up his judgment of the law, against that of the county court, as a defense, but he pleads the instructions of his superior officer. This he had a right to do, under the authority of the *Buchanan Case, supra*. But, according to our construction of the statute, the defense is unavailing, because we see that the relator has made a clear case entitling it to the writ; and this Court will not do a vain and useless thing by refusing the writ simply because the assessor has performed his official duty in obeying the instructions of his superior. But the effect of the majority opinion is to hold that the writ would have been granted, even if we had construed the statute not to authorize the bridge levy in question; to this proposition I can not agree. I do not think it is consistent with law and I am very sure it is not consistent with good reason. The *Buchanan Case* presented a condition which is the very reverse of this case; there the assessor had refused to obey the instructions of his superior officer who had advised him *correctly* as to the law, and it was held that he could not defend by saying that he was improperly advised; in the present case the assessor followed the advice of his superior who advised him *incorrectly* as to the law, and the opinion in effect says he should not have obeyed. Judge JOHN-SON who wrote the opinion of the Court in the *Buchanan Case*, at page 384 says: "As *mandamus* is a discretionary writ, if it manifestly appeared to us, that the articles enumerated in the alternative writ were under the law exempt from taxation, we should decline to issue the writ; not because the respondent has any right to make such a defense or to rely upon such reason as an excuse for his insubordination, but because we would not be willing to involve the citizens in an expensive litigation, growing out of the imposition of a clearly illegal tax." Notwithstanding this is *obiter*, it is, nevertheless, law; and it may be that so much of the majority opinion in the pres-

ent case as deals. with the respondent's right to justify his re-
fusal to extend the bridge levy, is *obiter* also; but if it is not,
the effect of it is to hold that, even if it manifestly appeared
that the tax is illegal, still this Court would compel the as-
sessor to extend it, simply because the state tax commissioner
should not be permitted to determine for himself whether a
county court levy is void or not. If this is law, this Court
finds itself in the anomolous position of being obliged, under
some conditions, to use its power to further an unlawful act.
To my mind this is preposterous.

It is a fundamental law, in relation to the writ of *mandam-
us,* that it is not a writ of right, but is discretionary with the
courts, and that before the peremptory writ will issue, the party
applying therefor must show a clear legal right to it.   Merrill on
Mandamus, section 291; 26 Cyc. 143; *Milliner's Adm'r* v.
*Harrison,* 33 Grat. 422; *State* v. *County Court,* 47 W. Va. 672
(35 S. E. 955) ; 2 Patton & Heath 38; *State* v. *Buchanan,* 24 W.
Va. 362 (Syl. point 9). The question of importance then is,
not what defense can, or can not, be made, but rather has re-
lator made out a clear case, entitling him to the writ? So that,
if it had appeared to us that the levy which the county court
was seeking to have extended was void, it would have been our
duty to deny the writ, regardless of matters alleged in the an-
swer of respondent.

*People ex rel. Wood* v. *Assessor,* 137 N. Y. 201, is a case in
point. The court of appeals of New York refused the writ,
and in its opinion, at page 204, says:   "The writ will be granted
to prevent a failure of justice, but never to promote manifest
injustice.  It is a remedial process and may be issued to rem-
edy a wrong, not to promote one, to compel the discharge of a
duty which ought to be performed, but not to compel the per-
formance of an act which will work a public and private mis-
chief, or to compel a compliance with the strict letter of the
law, in disregard of its spirit or in aid of a palpable fraud."
See also, *The Board of Supervisors of Cheboygan County* v.
*Supervisor of Mentor Township et als.,* 94 Mich. 386, another
case directly in point.  In that case, Grant, Judge, who wrote
the majority opinion, says, at page 388:  "It would, in my
judgment, be a reproach upon the law if courts were, under
the circumstances. of this case, compelled to issue the. writ of

*mandamus,* and thereby compel the imposition of a fraudulent tax. The circumstances must be exceptionally extraordinary which will justify a supervisor in refusing to comply with his statutory duty, but we think the respondents in this case were justified in so doing."

The fact that other remedies are open to the taxpayer by which he may resist an unlawful tax is no reason for denying to the state tax commissioner the right to secure the observance of law on the part of the tax levying bodies through the medium of advice and instructions to the assessors. Why compel him, in every case of an unlawful levy, to resort to *mandamus?* The remedy is open to both the state tax commissioner and the county court, and the legality of a disputed levy can be as quickly determined whether the writ be sued out by one, or the other. Why then minimize the importance of the state tax commissioner's office by deciding that he can not advise his assessor to refuse to extend a void levy, and that he must proceed by *mandamus?* This would give him no more authority than any taxpayer would have; and would defeat the purpose of the legislature, which was to make that office a supervisory office over all tax levying bodies in the state, and over the assessors and tax collectors. I think the assessor, in this instance, had a right to plead the instruction given him by the state tax commissioner, in justification of his refusal to extend the special bridge levy, but that this defense can not avail, because it manifestly appears that the bridge levy is legal.

*Writ Awarded.*