# CHARLESTON.

S. F. Bonham, *Who Sues, etc.* v. City of Charleston.

Submitted July 15, 1919. Decided July 17, 1919.

1. Municipal Corporations—*Special Assessment—Construction of Statute.*

  A statute purporting to impose liability upon one or more property owners to the relief of other taxpayers, by way of a special assessment for the improvement or maintenance of a public road, street or alley, is to be construed strictly, and if its scope is doubtful, such doubt will be resolved against the public and in favor of the property owners. (p. 408).

2. Same—*Special Assessment—Statute.*

  Where, as in this case, the amendment of a city charter omits a provision theretofore contained therein imposing liability upon abutting property owners, by way of special assessment, for the cost of paving street intersections and of setting curbing, and provides further that the city council shall fix the amount of the assessment and do all other things in connection therewith as is provided in a preceding section of the charter, which specifically states that such costs shall be borne and paid by the city and shall not be included in the amount chargeable to abutting owners, such omission and specific reference to a different provision will be deemed and treated as made with the intention thereafter to exonerate abutting owners from such liability. (p. 408).

Appeal from Circuit Court, Kanawha County.

Suit for injunction by S. F. Bonham, who sues, etc, against the City of Charleston. From a decree making perpetual an injunction, the defendant appeals.

*Affirmed.*

*Donald O. Blagg,* for appellant.

*E. B. Dyer* and *Morgan Owen,* for appellee.

Lynch, Judge:

Complaining of a decree of the circuit court of Kanawha County which made perpetual an injunction restraining the city of Charleston from assessing against the property of the plaintiff and the property of others similarly situated, in proportionate shares, certain portions of the cost of grading and

paving Monongalia Street in said city, namely, the cost of curbing along the same and of paving the street intersections, the defendant city prosecutes this appeal. The sole question to be determined is whether or not under section 88 of the charter of the city of Charleston, as amended by the legislature of 1919, the city is authorized to assess against abutting property owners the cost of the entire improvement, including curbing and street crossings or intersections.

Prior to the amendment of 1919 the city charter (Chapter 1, Acts 1915, Municipal Charters) provided two methods for paving the streets of the city: (1) Under section 61, known as the "bond issue plan," by which the city council was authorized to cause any street or alley in said city to be paved when it deemed it expedient so to do, and upon completion of the work to pay the contractor the full cost of the work out of the city's funds, and to reimburse itself by means of an assessment against the owners of property abutting on the street improved. It was expressly provided in that section, however, that "the cost of such paving or improvement chargeable to the abutting owners is not to include any portion of the amount paid for paving of squares at intersection of streets or for curbing, which shall in all cases be borne and paid by the city;" (2) under section 88, known as the "certificate plan," which in part was as follows:

"Upon the petition in writing of the owners of not less than sixty per cent of the lineal feet of the property abutting upon any block of any avenue, street or alley in said city, asking the city council to grade, curb, pave or macadamize, or otherwise permanently improve such avenue, street or alley, or to construct a sewer in front of said block, and offering in said petition to have their property so abutting* * assessed not only with their part of the cost of such improvements abutting upon their property, * * but also * * to have their said property proportionately assessed with the total costs of paving, grading, curbing or macadamizing, or other permanent improvements, of the intersection at the end of said block of the avenue, street or alley so * * improved * *, the council may order the block of such avenue, street or alley * * to be paved or otherwise per-

84 W. Va.

manently improved as prayed for therein, and the council may order the mayor and city clerk to issue to the contractor doing the paving or other said improvement a certificate for each installment of the amount of the assessment to be paid by the owner of any lot or fractional part thereof fronting on such block, * * * and the council shall fix the amount of such assessments, advertise for bids, and do all other things in connection therewith as is provided for paving or permanently improving any street or alley or any portion thereof in this act, and such certificates shall be issued in the same number of installments and payable at the same times as other paving of (or) permanent improvements are provided to be paid for * *.''

Under this section it was not necessary for the city to provide funds in the first instance, by a bond issue or other means, to pay for the improvement. Instead, upon completion of the work, it issued and delivered to the contractor certificates against each abutting owner for his proportionate share of the total expenditure, including the street curbing and the paving of street intersections. But action under this section was dependent upon the petition in writing of the owners of sixty per cent of the lineal feet of the property abutting on the street. The petitioners thereby expressly consented to be charged with the entire cost of the improvement.

Because of the difficulty frequently experienced in obtaining the requisite number of petitioners, the city having no funds with which to pave under the ''bond issue plan,'' section 88 was amended and re-enacted by the legislature of 1919, omitting all reference to the necessity of a ''petition in writing by the owners of * * * the property abutting upon any block,'' and providing simply that ''council may order'' the same to be paved, provided ''two-thirds of all the members elected to council shall concur therein.'' It was under this amended section 88 that the paving and curbing involved here were done.

The material parts of section 88, as so amended, are: ''In addition to the method provided for paving streets by section sixty-one of the charter * * *, the council may

order any block, street, avenue or alley to be paved or otherwise permanently improved, and the mayor and city clerk to issue to the contractor    *    *    *    a certificate for each installment of the amount of the assessment to be paid by the owner of any lot or fractional part thereof fronting on such street, avenue or alley,    *    *    *    and    *    *    *    shall fix the amount of such assessment, advertise for bids and do all other things in connection therewith as is provided for paving or permanently improving any street or alley or any portion thereof in section sixty-one,    *    *    *.''

Section 88, as it stood before the amendment of 1919, authorized the assessment of the entire cost of paving, including the setting of curbing and the paving of street intersections, upon abutting property owners, but only upon the petition of the prescribed percentage of such owners. Section 88, as amended, omits reference to curbing and street intersections. It is contended by the city, however, that it was the intention of the legislature to continue in effect the method of paving streets as formerly provided by section 88 and again to include in the assessment the cost of curbing and of paving intersections; in other words, that no material change was made except by dispensing with the necessity of a petition by property owners.

This construction seems to us not to comport with the language employed in that section, as amended. It materially changes the old method of procedure in that it empowers the city council to order the paving and improvement of any street or alley without the necessity of a petition by abutting property owners, and irrespective of their wishes, provided two-thirds of the members of the council concur in the passage of the ordinance. It also omits that provision of the section as it originally stood whereby the cost of curbing and of the paving of street intersections was charged to abutting owners, and expressly requires that "the city council shall fix the amount of such assessment, advertise for bids, and do all other things in connection therewith as is provided for paving or permanently improving any street or alley, or any portion thereof, in section sixty-one." The section last referred to clearly states that the cost of curbing and of pav-

ing intersections "shall in all cases be borne and paid by the city," and not included in the amount chargeable to abutting owners. This, when considered with the omission of the provision from section 88 authorizing the inclusion of such costs in the assessment when the abutting owners petitioned therefor, seems to evince a legislative intent not to impose that burden upon such owners. Under the section as it originally stood, it was only when the owners petitioned for the improvement and included in their petition the offer to pay the total cost thereof that such burden could be imposed. The legislature may have had reasons of its own for omitting the last named costs when it provided for the paving of streets upon the order of the city council without the necessity of a petition therefor by abutting owners and irrespective of their wishes. New and additional powers are thereby bestowed upon the council, and the reference made in section 88, as amended, to the provisions of section 61 strengthens the conclusion that the legislature intended to impose only such burdens upon abutting owners under that section as are imposed by section 61.

It is only by a forced construction, if at all, departing from the natural meaning of words, that the contention of appellant can be sustained. Such construction we are unwilling to approve, especially in view of the rule that statutes which impose burdens generally are to be construed strictly. 2 Lewis' Sutherland Statutory Construction (2nd Ed.) §§536-538. In *Fox* v. *Com.*, 16 Gratt. 1, 11, the court says: "It is a well settled rule of law that every charge upon the citizen must be imposed by clear and unambiguous language. Statutes which impose a duty upon the public will be critically construed with reference to the particular language in which they are expressed. When there is any ambiguity found, the construction must be in favor of the public; because it is a general rule that where the public are to be charged with a burden, the intention of the legislature to impose that burden must be explicitly and distinctly shown." "Laws imposing a license or tax are strictly construed, and whenever there is doubt as to the meaning or scope of such laws, they are construed more strongly against the government and in favor of the citizen." *Brown* v. *Com.*, 98 Va.

366, 370; *Jamison* v. *Com.,* 120 Va. 137, 149. See also *State* v. *County Court,* 60 W. Va. 339.

While it is true that statutes conferring power of taxation should not be construed so strictly as to defeat the manifest purpose or intent thereof, or to withhold or deny powers plainly given (*County Court* v. *Brammer,* 68 W. Va. 25; *State* v. *Board of Education,* 68 W .Va. 40), it is sufficient to state here that, upon a fair construction of the charter involved, the power alleged to exist in the city council to include in its assessment against abutting property owners the cost of curbs and the paving of intersections is not manifest or plainly authorized within the meaning of the two cases just cited.

Nor is *Hager* v. *Melton,* 66 W. Va. 62, inconsistent with the result reached in this case. There the charter provided that the owners of abutting property should pay two-thirds ''of the total cost of grading and paving said street, alley, or portion thereof,'' exclusive of the cost of the curbing, which was expressly made a charge against the city. The court held the language thus used to be sufficient to authorize the inclusion of the cost of paving street intersections in the estimate as part of the total cost. Here, however, the reference to the provisions of section 61 seems clearly to evince an intention that they should govern; and they by their express terms exclude the cost of paving intersections and of setting curbs.

For these reasons we affirm the decree.

*Affirmed.*